**Daniel Berke** (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BILLY FIELDS**, | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **PICK QUICK FOODS, INC., KSK 786 INC.**, | **CASE NO.: 25-cv-4881** |
| Defendants. | **JURY DEMANDED** |

## CIVIL COMPLAINT

BILLY FIELDS (the "Plaintiff"), as and for his complaint against PICK QUICK FOODS, INC. and KSK 786 INC. (the "Defendants"), respectfully brings before the Court the below allegations.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the places of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants.

2.  Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3.  Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5.  This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district.

7. Venue is also proper in this district because Defendants' property, the public accommodations, which are the subjects of this action, are both located in, and do business within, this judicial district.

## PARTIES

8. At all relevant times herein, Plaintiff is and has been a resident of New York County, New York.

9. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

10. All references to "Key Food" in this complaint are made regarding the supermarket Key Food, 224 McGuinness Blvd., Brooklyn, NY 11222.

11. All references to "KFC" in this complaint are made regarding the fast-food restaurant KFC, 208 McGuinness Boulevard, Brooklyn, NY 11222.

12. All references to the parking lot (the "Parking Lot") in this Complaint are made regarding the parking lot serving both Key Food and KFC, which is referenced in the NYC Department of Finance's Office of the City Register as located in Kings County on Block 2577, Lot 1, and on which both Key Food and KFC are also located.

13. At all times relevant herein, Plaintiff's complaint stems from the discrimination he experienced in the Parking Lot of Key Food and KFC, where he had difficulties maneuvering his wheelchair due to architectural barriers in the Parking Lot, including steep accessible spaces, that frustrated his access and ability to buy food at these businesses.

14. Key Food, KFC, and the Parking Lot are the subjects of this lawsuit and are hereinafter referred to both by their name and as the "Subject Facilities."

15. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that PICK QUICK FOODS, INC. is the owner of the real property identified on the NYC Tax Map of the Kings County as Block 2577, Lot 1 (the "Commercial Lot"), located at 224 McGuinness Blvd., Brooklyn, NY 11222.

16. Key Food, KFC, and the Parking Lot are located on the Commercial Lot.

17. At all relevant times herein, Defendant PICK QUICK FOODS, INC. operates Key Food.

18. At all relevant times herein, Defendant PICK QUICK FOODS, INC. owns the building in which Key Food is located.

19. At all relevant times herein, Defendant PICK QUICK FOODS, INC. owns the Commercial Lot.

20. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. controlled Key Food.

21. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. managed Key Food.

22. At all relevant times herein and after January 26, 1992, Defendant PICK QUICK FOODS, INC. maintained Key Food.

23. At all relevant times herein and after January 26, 1992, Defendant PICK QUICK FOODS, INC. designed Key Food.

24. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. built Key Food.

25. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. constructed Key Food.

26. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. erected Key Food.

27. At all relevant times herein and since January 26, 1992, Defendant PICK QUICK FOODS, INC. altered Key Food.

28. At all relevant times herein and since January 26, 1992, Defendant PICK QUICK FOODS, INC. operated Key Food.

29. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. maintained control over the Parking Lot.

30. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. managed the Parking Lot.

31. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. maintained the Parking Lot.

32. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. designed the Parking Lot.

33. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. built the Parking Lot.

34. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. constructed the Parking Lot.

35. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. erected the Parking Lot.

36. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. altered the Parking Lot.

37. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. operates the Parking Lot.

38. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. has been operating the Parking Lot.

39. At all relevant times herein, and after January 26, 1992, Defendant PICK QUICK FOODS, INC. controls the Parking Lot.

40. At all relevant times herein, Defendant PICK QUICK FOODS, INC. owns the Commercial Lot.

41. At all relevant times herein, Key Food is in a building located on the Commercial Lot.

42. At all relevant times herein, Key Food is in a building constructed on the Commercial Lot.

43. At all relevant times herein, Key Food is in a building built on the Commercial Lot.

44. At all relevant times herein, Key Food's customers park their vehicles in the Parking Lot.

45. At all relevant times herein, Key Food's customers are permitted to park their vehicles in the Parking Lot.

46. At all relevant times herein, PICK QUICK FOODS, INC. operates Key Food in the building owned by PICK QUICK FOODS, INC.

47. At all relevant times herein, Defendant KSK 786 INC. operates KFC.

48. At all relevant times herein, Defendant PICK QUICK FOODS, INC. owns the building, in which KFC is located.

49. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. controlled KFC.

50. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC., managed KFC.

51. At all relevant times herein and after January 26, 1992, Defendant KSK 786 INC. maintained KFC.

52. At all relevant times herein and after January 26, 1992, Defendant KSK 786 INC. designed KFC.

53. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. built KFC.

54. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. constructed KFC.

55. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. erected KFC.

56. At all relevant times herein and since January 26, 1992, Defendant KSK 786 INC. altered KFC.

57. At all relevant times herein and since January 26, 1992, Defendant KSK 786 INC. operated KFC.

58. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. maintained control over the Parking Lot.

59. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. managed the Parking Lot.

60. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. maintained the Parking Lot.

61. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. designed the Parking Lot.

62. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. built the Parking Lot.

63. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. constructed the Parking Lot.

64. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. erected the Parking Lot.

65. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. altered the Parking Lot.

66. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. operates the Parking Lot.

67. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. has been operating the Parking Lot.

68. At all relevant times herein, and after January 26, 1992, Defendant KSK 786 INC. controls the Parking Lot.

69. At all relevant times herein, KFC is in a building located on the Commercial Lot.

70. At all relevant times herein, KFC is in a building constructed on the Commercial Lot.

71. At all relevant times herein, KFC is in a building built on the Commercial Lot.

72. At all relevant times herein, KFC's customers park their vehicles in the Parking Lot.

73. At all relevant times herein, KFC's customers are permitted to park their vehicles in the Parking Lot.

74. At all relevant times herein, KSK 786 INC. operates KFC in the building it owns.

75. PICK QUICK FOODS, INC. is an American for-profit corporation organized under the laws of New York State.

76. PICK QUICK FOODS, INC. is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

77. NYS DOS maintains entity information for PICK QUICK FOODS, INC. in its Corporation and Business Entity Database ("CBED").

78. NYS DOS CBED maintains a corporate record for PICK QUICK FOODS, INC.

79. NYS DOS CBED's corporate record for PICK QUICK FOODS, INC. states that its chief executive officer's name and address are the following: Benjamin J. Levine, 445 Westbury Blvd, Hempstead, NY 11550.

80. NYS DOS CBED's corporate record for PICK QUICK FOODS, INC. states that the address of its principal executive office is 445 Westbury Blvd, Hempstead, NY 11550.

81. NYS DOS CBED's corporate record for PICK QUICK FOODS, INC. states that its registered agent is Global Settlement Corp., 1981 Marcus Avenue, Suite E 117, Lake Success, NY 11043.

82. NYS DOS CBED's corporate record for PICK QUICK FOODS, INC. does not list an entry for the entity primary location name and address.

83. NYS DOS CBED record for PICK QUICK FOODS, INC. states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is Mavrides Moyal Packman & Sadkin LLP, 1981 Marcus Avenue Suite E 117, Lake Success, NY 11042.

84. KSK 786 INC. is an American for-profit corporation organized under the laws of New York State.

85. KSK 786 INC. is licensed to conduct business in the State of New York by NYS DOS.

86. NYS DOS maintains entity information for KSK 786 INC. in its CBED.

87. NYS DOS CBED maintains a corporate record for KSK 786 INC.

88. NYS DOS CBED's corporate record for KSK 786 INC. states that its chief executive officer's name and address are the following: Amna Kirmani, 208 McGuiness Boulevard, Brooklyn, NY 11222.

89. NYS DOS CBED's corporate record for KSK 786 INC. states that the address of its principal executive office is 30-42 Steinway Street, Astoria, NY 11103.

90. NYS DOS CBED's corporate record for KSK 786 INC. contains no information regarding its registered agent's name and address.

91. KSK 786 INC.'s registered agent's name and address are not known to Plaintiff.

92. KSK 786 INC. does not have a registered agent.

93. NYS DOS CBED's corporate record for KSK 786 INC. does not state the entity's primary location name and address.

94. NYS DOS CBED record for KSK 786 INC. states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is KSK 786 Inc., 3042 Steinway Street, Astoria, NY 11103.

95. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that the Commercial Lot, on which Key Food, KFC, and the adjacent Parking Lot are located, is owned by PICK QUICK FOODS, INC.

96. At all relevant times herein, Defendant PICK QUICK FOODS, INC. was, and currently is, the owner of the Commercial Lot in Kings County on which the Subject Facilities are located.

97. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that PICK QUICK FOODS, INC. is located at 83-10 Rockaway Blvd., Ozone Park, NY.

98. At all relevant times herein, and upon information and belief, Defendant PICK QUICK FOODS, INC. signed a real property lease with Defendant KSK 786 INC.

99. At all relevant times herein, and upon information and belief, according to a lease between Defendant PICK QUICK FOODS, INC. and Defendant KSK 786 INC., Defendant KSK 786 INC. is responsible for maintenance of the Parking Lot.

100. At all relevant times herein, and upon information and belief, according to a lease between Defendant PICK QUICK FOODS, INC. and Defendant KSK 786 INC., Defendant KSK 786 INC. is responsible for ensuring that the Parking Lot complies with the 1991 ADA Standards.

101. At all relevant times herein, and upon information and belief, according to a lease between Defendant PICK QUICK FOODS, INC. and Defendant KSK 786 INC., Defendant KSK 786 INC. is responsible for ensuring that the Parking Lot complies with the 2010 ADA Standards.

102. At all relevant times herein, and upon information and belief, according to a lease between Defendant PICK QUICK FOODS, INC. and Defendant KSK 786 INC., Defendant KSK 786 INC. is responsible for ensuring that the Parking Lot complies with 28 C.F.R. §36.201.

103.    At all relevant times herein, and upon information and belief, according to a lease between Defendant PICK QUICK FOODS, INC. and Defendant KSK 786 INC., Defendant KSK 786 INC. is responsible for ensuring that the Parking Lot complies with the New York State Civil Rights laws.

104.    At all relevant times herein, and upon information and belief, according to a lease between Defendant PICK QUICK FOODS, INC. and Defendant KSK 786 INC., Defendant KSK 786 INC. is responsible for ensuring that the Parking Lot complies with the New York State Human Rights laws.

105.    At all relevant times herein, and upon information and belief, according to a lease between Defendant PICK QUICK FOODS, INC. and Defendant KSK 786 INC., Defendant KSK 786 INC. is responsible for ensuring that the Parking Lot complies with the New York City Human Rights laws.

106.    At all relevant times herein, Defendant PICK QUICK FOODS, INC., as the owner of the Commercial Lot, is responsible for maintenance of the Parking Lot.

107.    At all relevant times herein, Defendant PICK QUICK FOODS, INC., as the owner of the Commercial Lot, is responsible for ensuring that the Parking Lot complies with the 1991 ADA Standards.

108.    At all relevant times herein, Defendant PICK QUICK FOODS, INC., as the owner of the Commercial Lot, is responsible for ensuring that the Parking Lot complies with the 2010 ADA Standards.

109.    At all relevant times herein, Defendant PICK QUICK FOODS, INC., as the owner of the Commercial Lot, is responsible for ensuring that the Parking Lot complies with 28 C.F.R. §36.201.

110.    At all relevant times herein, Defendant PICK QUICK FOODS, INC., as the owner of the Commercial Lot, is responsible for ensuring that the Parking Lot complies with the New York State Civil Rights laws.

111.    At all relevant times herein, Defendant PICK QUICK FOODS, INC., as the owner of the Commercial Lot, is responsible for ensuring that the Parking Lot complies with the New York State Human Rights laws.

112.    At all relevant times herein, and upon information and belief, Defendant PICK QUICK FOODS, INC. signed a real property lease with Defendant KSK 786 INC., pursuant to which, KSK 786 INC. is responsible for ensuring that the Parking Lot is in compliance with the New York State Civil Rights laws.

113.    At all relevant times herein, and upon information and belief, Defendant PICK QUICK FOODS, INC. signed a real property lease with Defendant KSK 786 INC., pursuant to which, KSK 786 INC. is responsible for ensuring that the Parking Lot complies with the New York State Human Rights laws.

114.    At all relevant times herein and upon information and belief, Defendant PICK QUICK FOODS, INC. signed a real property lease with Defendant KSK 786 INC., pursuant to which, KSK 786 INC. is responsible for ensuring that the Parking Lot complies with the New York City Human Rights laws.

115.    Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant PICK QUICK FOODS, INC., which houses the public accommodation, cannot escape liability for the failure of its tenant Defendant KSK 786 INC. to comply with the ADA.

116.    Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant PICK QUICK FOODS, INC., which houses the public accommodation, cannot escape liability for the failure of its tenant to comply with the 1991 ADA Standards.

117.    Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant PICK QUICK FOODS, INC., which houses the public accommodation, cannot escape liability for the failure of its tenant to comply with the 2010 ADA Standards.

118.    Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant PICK QUICK FOODS, INC., which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Civil Rights laws.

119.    Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant PICK QUICK FOODS, INC., which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Human Rights laws.

120.    Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant PICK QUICK FOODS, INC., which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York City Human Rights laws.

121.    At all times relevant herein, Defendants are jointly and severally liable for the design of the Parking Lot.

122.     At all times relevant herein, Defendants are jointly and severally liable for the construction of the Parking Lot.

123.     At all times relevant herein, Defendants are jointly and severally liable for the maintenance of the Parking Lot.

124.     At all times relevant herein, Defendants are jointly and severally liable for the management of the Parking Lot.

125.     At all times relevant herein, Defendants are jointly and severally liable for the control of the Parking Lot.

126.     At all times relevant herein, Defendants are jointly and severally liable for the alteration of the Parking Lot.

127.     At all times relevant herein, Defendants are jointly and severally liable for the operation of the Parking Lot.

128.     At all relevant times herein, and after January 26, 1992, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or altered and/or made alterations to the Parking Lot.

129.     At all relevant times herein, and after March 15, 2012, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or altered and/or made alterations to the Parking Lot.

130.     After January 26, 1992, and at all relevant times herein, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to Key Food.

131.     After January 26, 1992, and at all relevant times herein, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to KFC.

132.     After January 26, 1992, and at all relevant times herein, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to the Parking Lot.

133.     After March 15, 2012, and at all relevant times, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to Key Food.

134.     After March 15, 2012, and at all relevant times, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or

erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to KFC.

135.    After March 15, 2012, and at all relevant times, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to the Parking Lot.

136.    Key Food is a supermarket, i.e. a store, and is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

137.    KFC is a restaurant and is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104 Place of public accommodation (2), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).


## STATUTORY SCHEME

138.    On July 26, 1990, Republican President George H. W. Bush, who himself subsequently became disabled and had to rely on a wheelchair later in his life, signed the ADA into law, which extended essential civil rights to individuals with disabilities.

139.    That law had been championed by Senator Robert J. Dole, who himself had suffered from a significant disability, which resulted from the wounds he has received while fighting in Italy during liberation of the world from the fascists' dictatorship during World War II.

140.     On that day, July 26, 1990, the United States of America enacted the ADA, establishing extremely important and incontrovertibly indispensable civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

141.     Congress made the following findings:

a.  Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

c.  Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

d.  Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to

make modifications to existing facilities and practices,
exclusionary qualification standards and criteria,
segregation, and regulation to lesser services, programs,
activities, benefits, jobs or other opportunities; and

e.   The continuing existence of unfair and unnecessary
discrimination and prejudice denies people with
disabilities the opportunity to compete on an equal basis
and to pursue those opportunities for which our free
society is justifiably famous, and costs the United States
billions of dollars in unnecessary expenses resulting
from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

142.    Furthermore, Congress also explicitly stated that the ADA had to:

a.   Provide a clear and comprehensive national mandate for
the elimination of discrimination against individuals
with disabilities;

b.   Provide clear, strong, consistent, enforceable standards
addressing discrimination against individuals with
disabilities; and

c.   Invoke the sweep of congressional authority, including
the power to enforce the fourteenth amendment and to
regulate commerce, in order to address the major areas

19

of discrimination faced day-to-day by people with
disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

143.     Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the
congressional intent was to ensure that no place of public accommodation may discriminate
against an individual on the basis of such individual's disability, with regard to the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations at that place of public accommodation.

144.     Congress provided commercial businesses at least 18 months from enactment to
make their facilities compliant with the regulations in the ADA. The effective date of Title
III of the ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or
fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R.
§36.508(a).

145.     The 2000 United States census indicates that in the civilian non-institutionalized
population more than 49.7 million people in the United States have a disability. The census
also indicates that more than 1.39 million New Yorkers have a mobility disability.

146.     ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York
State Human Rights laws, and the New York City Human Rights laws recognize
individuals with disabilities as a protected class.

147.     It is unlawful for a private entity which owns, leases, leases to, or operates a place
of public accommodation, to discriminate against an individual with a disability. 42 U.S.C.
§12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

148.    Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

149.    The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, each have a duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

150.    Key Food is a business which affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(E).

151.    KFC is a business which affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(B).

152.    Key Food affects interstate commerce within the meaning of 28 C.F.R. §36.104 Place of public accommodation (5).

153.    KFC affects interstate commerce within the meaning of 28 C.F.R. §36.104 Place of public accommodation (2).

154.    Regardless of any contractual provisions stating otherwise, the landlord and owner of real property, which houses the public accommodation, cannot escape liability for the failure of its tenant to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

155.    Discriminatory intent is not required to establish liability under the ADA.

156.     Discriminatory intent is not required to establish liability under the New York State Civil Rights Laws.

157.     Discriminatory intent is not required to establish liability under the New York State Human Rights laws.

158.     Discriminatory intent is not required to establish liability under the New York City Human Rights laws.

159.     One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.
>
> 28 C.F.R. §36.304

160.     At all relevant times herein, Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. had a duty to do so and failed to remove architectural barriers, removal of which was readily achievable, that denied an individual with a disability, including Plaintiff, the opportunity to participate in, or benefit from services or accommodations at Key Food, and/or KFC, and or the Parking Lot as per 28 C.F.R. §36.304.

161.     At all relevant times herein, removal of architectural barriers at Key Food, and/or KFC, and/or the Parking Lot has been and is readily achievable by Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC.

162.     At all relevant times herein, Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. had a duty to, and failed to, remove architectural barriers for disabled individuals that exist in the Parking Lot, even though it has been and is readily achievable to remove them.

163.     The New York City Department of Buildings ("DOB") maintains records regarding construction and alterations of buildings located in Brooklyn.

164.     At all relevant times herein, and upon information and belief, after January 26, 1992, Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to the Parking Lot and/or primary function areas of Key Food, and/or primary function areas of KFC.

165.     At all relevant times herein, and upon information and belief, after March 15, 2012, Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to the Parking Lot and/or primary function areas of Key Food and/or primary function areas of KFC.

166.     At all relevant times herein, and upon information and belief, Defendant PICK QUICK FOODS, INC. made alterations to the Parking Lot and/or primary function areas of Key Food and had a duty to, and failed, to make the path of travel to Key Food readily accessible to the maximum extent feasible for individuals with disabilities.

167.     At all relevant times herein, and upon information and belief, Defendant PICK QUICK FOODS, INC. made alterations to the Parking Lot and/or primary function areas

of KFC and had a duty to and failed to make the path of travel to KFC readily accessible to the maximum extent feasible for individuals with disabilities.

168.    At all relevant times herein, and upon information and belief, Defendant KSK 786 INC. had a duty to and failed to make the path of travel to KFC readily accessible to the maximum extent feasible for individuals with disabilities.

169.    At all relevant times herein, Defendants PICK QUICK FOODS, INC. and/or KSK 786 INC. had a duty, and failed, to spend up to 20% of the costs of alterations to Key Food and/or KFC and/or the Parking Lot so as to make the path of travel from the Parking Lot to Key Food and/or from the Parking Lot to KFC readily accessible to the maximum extent feasible for individuals with disabilities and failed to comply with the 1991 ADA Standards and/or the 2010 ADA Standards.

170.    Plaintiff is informed and believes, and therefore alleges, that construction work was performed in the Parking Lot after March 15, 2012.

171.    Plaintiff is informed and believes, and therefore alleges, that the Parking Lot was modified after March 15, 2012.

172.    Plaintiff is informed and believes, and therefore alleges, that the Parking Lot has undergone alterations after March 15, 2012.

173.    Plaintiff is informed and believes, and therefore alleges, that alterations were made to the Parking Lot after March 15, 2012.

174.    Plaintiff is informed and believes, and therefore alleges, that after March 15, 2012, the Parking Lot was paved and/or re-paved and/or painted and/or marked, and/or placed signs on, and/or altered.

175.    "'[D]iscrimination' includes, with respect to a facility or part thereof that is altered by, on behalf  [**12] of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, *a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities*, including individuals who use wheelchairs."

Roberts v. Royal Atl. Corp., 542 F3d 363, 368 [2d Cir 2008])

176.    "Where the entity is undertaking an alteration that affects or could affect usability of or *access to an area of the facility containing a primary function*, the entity shall also make the alterations in such a manner that, to *the maximum extent feasible, the path of travel* to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are *not disproportionate to the overall alterations* in terms of cost

and scope (as determined under criteria established by the

Attorney General). 42 U.S.C. § 12183(a)(2) (emphasis added)."

Id.

177.    "We must therefore first determine whether a challenged facility (or part thereof) has been "altered" in "a manner that affects or could affect its usability." Id.

178.    ""If alterations have been made, a defendant "discriminates" if those altered areas – and paths of travel to altered areas that "contain a primary function" – are not made readily accessible to disabled individuals "to the maximum extent feasible."" Id.

179.    "Even in the absence of alterations, a defendant nonetheless "discriminates" if it fails to remove any existing barriers to accessibility where such removal "is readily achievable."" Id. § 12182(b)(2)(A)(iv). Roberts v. Royal Atl. Corp., 542 F3d 363, 369 [2d Cir 2008]

180.    Defendant PICK QUICK FOODS, INC. made alterations to and/or paved and/or re-paved and/or painted and/or re-painted the Parking Lot after March 15, 2012.

181.    Defendant PICK QUICK FOODS, INC. made alterations to the Parking Lot after March 15, 2012, and did not make the path of travel from the Parking Lot to Key Food readily accessible to the maximum extent feasible for individuals with disabilities and did not comply with the 1991 ADA Standards and/or the 2010 ADA Standards.

182.    Defendant PICK QUICK FOODS, INC. made alterations to the Parking Lot after March 15, 2012, and did not make path of travel from the Parking Lot to KFC readily accessible to the maximum extent feasible for individuals with disabilities and did not make it compliant with the 1991 ADA Standards and/or the 2010 ADA Standards.

183.    Defendant KSK 786 INC. made alterations to the Parking Lot after March 15, 2012, and did not make the path of travel from the Parking Lot to KFC readily accessible to the maximum extent feasible for individuals with disabilities and did not make it compliant with the 1991 ADA Standards and/or the 2010 ADA Standards.

184.    Defendant KSK 786 INC. made alterations to and/or paved and/or re-paved and/or painted and/or re-painted the Parking Lot after March 15, 2012.

185.    Defendant KSK 786 INC. made alterations to the Parking Lot after March 15, 2012, and did not make path of travel from the Parking Lot to KFC readily accessible to the maximum extent feasible for individuals with disabilities and did not make it compliant with the 1991 ADA Standards and/or 2010 ADA Standards.

186.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot after January 26, 1992.

187.     Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 1996.

188.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 1997.

189.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 1998.

190.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 1999.

191.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2000.

192.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2001.

193.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2002.

194.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2003.

195.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2004.

196.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2005.

197.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2006.

198.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2007.

199.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2008.

200.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2009.

201.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2010.

202.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2011.

203.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2012.

204.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2013.

205.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2014.

206.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2015.

207.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2016.

208.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2017.

209.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2018.

210.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2019.

211.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2020.

212.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2021.

213.      Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2022.

214.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2023.

215.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2024.

216.    Defendant PICK QUICK FOODS, INC. and/or Defendant KSK 786 INC. made alterations to and/or painted and/or paved and/or re-paved the Parking Lot in 2025.

217.    At all relevant times herein, Defendants failed to remediate architectural barriers for individuals with disabilities that existed in the Parking Lot after January 26, 1992 when the remediations were readily achievable.

218.    At all relevant times herein, Defendants failed to remediate architectural barriers for individuals with disabilities that existed in the Parking Lot after March 15, 2012, when the remediations were readily achievable.

219.    At all relevant times herein, Defendants failed to remediate architectural barriers for individuals with disabilities that existed in the Parking Lot after March 15, 2012, when these architectural barriers violated 1991 ADA Standards and/or 2010 ADA Standards.

220.    After March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

221.    Plaintiff has been diagnosed by a physician as having suffered an ischemia. He suffered right-sided hemiparesis, which caused nerve damage, and made it difficult for him to stand and balance his body weight, which resulted in an inability to walk.

222.    Plaintiff's physician prescribed him a motorized mobility scooter.

223.    Plaintiff obtained the motorized mobility scooter and uses it for all activities requiring mobility.

224.    For Plaintiff to safely use his motorized mobility scooter, routes connecting accessible spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose danger of tipping, catching wheels, or falling.

225.    Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…. The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

> 28 C.F.R. §36.104 (italics in original).

226.    The Parking Lot is used by Key Food's customers.

227.    The Parking Lot is used by KFC's customers.

228.    There are four accessible parking spaces in the Parking Lot.

229.    There are no access aisles in the Parking Lot.

230.    Plaintiff cannot walk and must use his motorized mobility scooter to enter and exit an accessible van.

231.    Plaintiff lives on Manhattan's Upper West Side.

232.     Plaintiff lived on Manhattan's Upper West Side for approximately eight years.

233.     Plaintiff visits his friends in Brooklyn.

234.     Plaintiff regularly shops in Brooklyn.

235.     Plaintiff visits parks and other attractions in Brooklyn.

236.     Key Food is in Greenpoint, Brooklyn.

237.     KFC is in Greenpoint, Brooklyn.

238.     Plaintiff lives approximately seven miles away from Key Food.

239.     Plaintiff lives approximately seven miles away from KFC.

240.     Plaintiff lives approximately 25 minutes away from Key Food by an accessible van.

241.     Plaintiff lives approximately 25 minutes away from KFC by an accessible van.

242.     Plaintiff uses his mobility scooter and travels, shops in stores and goes to restaurants in Manhattan and in other boroughs of New York City.

243.     Plaintiff uses his mobility scooter, travels, shops in stores and goes to restaurants in neighborhoods in Brooklyn and Queens, including Greenpoint, Williamsburg, South Williamsburg, Maspeth, Sunnyside Gardens, Hunters Point, and Fresh Pond, among others.

244.     Plaintiff uses his mobility scooter, travels, shops in stores and goes to restaurants in neighborhoods throughout the five New York City boroughs.

245.     Plaintiff often visits these neighborhoods in an accessible van.

246.     Plaintiff often visits these neighborhoods by subway.

247.     Plaintiff takes trips to and visits Brooklyn, where he meets with friends.

248.     Plaintiff visits Brooklyn approximately once per month.

249.     Plaintiff has been visiting Brooklyn for over ten years.

250.     During his visits to Brooklyn Plaintiff meets with friends who live in it.

251.     Plaintiff shops in Brooklyn.

252.     Plaintiff dines in various neighborhoods throughout Brooklyn.

253.     Plaintiff often visits Brooklyn parks and museums, including McCarren Park, Front Greene Park, Brooklyn Botanic Gardens, Prospect Park Zoo, Prospect Park, and the Green-Wood Cemetery, among others.

254.     Plaintiff shopped in Key Food in 2025.

255.     Plaintiff intends to continue shopping in Key Food in 2025.

256.     Plaintiff intends to continue shopping in Key Food in the future.

257.     Plaintiff dined at KFC in 2025.

258.     Plaintiff intends to continue dining at KFC in 2025.

259.     Plaintiff intends to continue dining at KFC in the future.

260.     In August 2025, Plaintiff arranged for a trip in an accessible van and travelled in it to the Subject Facilities.

261.     In August 2025, the driver of the accessible van dropped off Plaintiff in an accessible space in the Parking Lot adjacent to Key Food and KFC.

262.     At all relevant times herein, Plaintiff had difficulties controlling his motorized mobility scooter on the steep slope of an accessible space in the Parking Lot.

263.     At all relevant times herein, Plaintiff had difficulties maneuvering his motorized mobility scooter within an accessible space of the Parking Lot because the accessible space had a steep slope.

264.     At all relevant times herein, Plaintiff had difficulties accessing the accessible van because of the steep slope of the accessible space in the Parking Lot.

265.     At all relevant times herein, Plaintiff had difficulties entering and/or exiting the accessible van because there was no access aisle in the Parking Lot.

266.     At all relevant times herein, due to the architectural barriers Plaintiff encountered in the Parking Lot, he left frustrated and disappointed.

267.     At all relevant times herein, the Parking Lot was designed by one or more Defendants, who did not have Plaintiff and his needs in mind, did not accommodate his disabilities, and did not facilitate his access to Key Food.

268.     At all relevant times herein, the Parking Lot was designed by one or more Defendants, who did not have Plaintiff and his needs in mind, did not accommodate his disabilities, and did not facilitate his access to KFC.

269.     At all relevant times herein, Defendants discriminated against Plaintiff by denying him a safe and/or accessible path of travel from the Parking Lot to Key Food.

270.     At all relevant times herein, Defendants discriminated against Plaintiff by denying him a safe and/or accessible path of travel from the Parking Lot to KFC.

271.     At all relevant times herein, one or more Defendants constructed the Parking Lot with disregard of the accessibility requirements of the ADA and thereby one or more Defendants failed to accommodate Plaintiff and his access to Key Food.

272.     At all relevant times herein, one or more Defendants constructed the Parking Lot with disregard of the accessibility requirements of the ADA and thereby one of them or both failed to accommodate Plaintiff and his access to KFC.

**Plaintiff Intends to Return to Key Food and KFC**

273.    Key Food and KFC are in Greenpoint, Brooklyn, NY.

274.    Key Food and KFC are approximately seven miles from Plaintiff's home on the Upper West side in Manhattan.

275.    Plaintiff lives approximately 25 minutes away from Key Food and KFC by an accessible van.

276.    Plaintiff intends to visit and shop in Key Food in the future as soon as the architectural barriers are removed.

277.    Plaintiff intends to visit and dine at KFC in the future as soon as the architectural barriers are removed.

278.    Plaintiff intends to visit Key Food again in the future when he visits Greenpoint, Brooklyn, shop in it and enjoy its services as soon as the architectural barriers are removed.

279.    Plaintiff intends to visit KFC again in the future when he visits Greenpoint, Brooklyn, dine in it and enjoy its services as soon as the architectural barriers are removed.

**Plaintiff is a Tester**

280.    Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting his civil rights.

281.    Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

282.    Completely independent of his personal desire to have access to Key Food and KFC free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

283.    As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

284.    Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

285.    When Plaintiff determines that barriers to access are unlawful, he initiates legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

286.    Following completion of legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

287.    As a tester, Plaintiff visited Key Food to encounter architectural barriers to access.

288.    As a tester, Plaintiff visited KFC to encounter architectural barriers to access.

289.    As a tester, Plaintiff personally encountered the architectural barriers in the Parking Lot.

290.    Plaintiff visited Key Food, shopped in it, and encountered ADA violations in the Parking Lot.

291.    Plaintiff visited KFC, dined in it, and encountered ADA violations in the Parking Lot.

292.    Plaintiff encountered the above-mentioned ADA violations during his visit to Key Food.

293.    Plaintiff encountered the above-mentioned ADA violations during his visit to KFC.

294.    Plaintiff encountered the ADA violations in the Parking Lot.

295.    Following conclusion of this lawsuit, Plaintiff intends to return to Key Food as both a customer, who wants to shop in it, and as a tester to determine whether Defendants remediated their ADA violations.

296.    Following conclusion of this lawsuit, Plaintiff intends to return to KFC as both a customer, who wants to eat in it, and as a tester to determine whether Defendants remediated their ADA violations.

297.    Plaintiff's motivation to return to Key Food in part stems from his desire to utilize ADA litigation to make his community more accessible for him and other disabled individuals, who cannot visit it because of the architectural barriers in its Parking Lot.

298.    Plaintiff's motivation to return to KFC in part stems from his desire to utilize ADA litigation to make his community more accessible for him and other disabled individuals, who cannot visit it because of the architectural barriers in its Parking Lot.

299.    Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to Key Food as soon as it is accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to remediate the ADA violations in the Parking Lot.

300.    Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to KFC as soon as it is accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to remediate the ADA violations in the Parking Lot.

301.    Following conclusion of this lawsuit, Plaintiff intends to visit Key Food at least twice a year to ensure that Defendants comply with the ADA and to shop in it.

302.     Following conclusion of this lawsuit, Plaintiff intends to visit KFC at least twice a year to ensure that Defendants comply with the ADA and to dine in it.

303.     Plaintiff is confident that Defendants will not remediate the ADA violations in the Parking Lot without the Court's intervention.

304.     Plaintiff will continue to suffer discrimination without the Court's intervention.

305.     Plaintiff will enforce the injunction once it is issued by the Court.


**Violations of Title III in the Subject Facilities**

306.     At all relevant times herein, due to the unlawful architectural barriers in the Parking Lot, Plaintiff did not have an accessible path of travel from it to Key Food that complied with the ADA requirements, had difficulties with shopping at the store, and suffered an injury in fact.

307.     At all relevant times herein, due to the unlawful architectural barriers in the Parking Lot, Plaintiff did not have an accessible path of travel from it to KFC that complied with the ADA requirements, had difficulties with dining at the restaurant, and suffered an injury in fact.

308.     At all relevant times herein and since January 26, 1992, Defendants failed to remove architectural barriers for disabled individuals, including Plaintiff, that frustrate their ability to enter Key Food when removing such barriers has been and is readily achievable.

309.     At all relevant times herein and since January 26, 1992, Defendants failed to remove architectural barriers for disabled individuals, including Plaintiff, that frustrate their ability to enter KFC when removing such barriers has been and is readily achievable.

310.    At all relevant times herein and since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to Key Food readily accessible to the maximum extent feasible for individuals with disabilities that complied with the ADA.

311.    At all relevant times herein and since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to KFC readily accessible to the maximum extent feasible for individuals with disabilities that complied with the ADA.

312.    At all relevant times herein and since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to Key Food readily accessible to the maximum extent feasible for individuals with disabilities by failing to spend up to 20% of the costs of alterations made to the Parking Lot.

313.    At all relevant times herein and since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to KFC readily accessible to the maximum extent feasible for individuals with disabilities by failing to spend up to 20% of the costs of alterations made to the Parking Lot.

314.    At all relevant times herein and since January 26, 1992, Defendants failed to make certain that the Parking Lot was readily accessible to the maximum extent feasible for individuals with disabilities.

315.    At all relevant times herein and since January 26, 1992, Defendants failed to bring the Parking Lot in compliance with 1991 ADA Standards when it was readily achievable to do so.

316.    At all relevant times herein and since January 26, 1992, Defendants failed to make certain that the Parking Lot complies with the 2010 ADA Standards when it was readily achievable to do so.

317.     At all relevant times herein and Since January 26, 1992, Defendants engaged in unlawful practices that violate the ADA.

318.     At all relevant times herein and since January 26, 1992, Defendants engaged in unlawful practices that violate the New York State Civil laws.

319.     At all relevant times herein and since January 26, 1992, Defendants engaged in unlawful practices that violate the New York State Human Rights laws.

320.     At all relevant times herein and since January 26, 1992, Defendants engaged in unlawful practices that violate the New York City Human Rights laws.

321.     At all relevant times herein and since March 15, 2012, Defendants failed to make Key Food readily accessible to the maximum extent feasible for individuals with disabilities.

322.     At all relevant times herein and since March 15, 2012, Defendants failed to make KFC readily accessible to the maximum extent feasible for individuals with disabilities.

323.     At all relevant times herein and since March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

324.     At all relevant times herein and since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA.

325.     At all relevant times herein and since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Civil laws.

326.     At all relevant times herein and since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Human Rights laws.

327.    At all relevant times herein and since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York City Human Rights laws.

328.    At all relevant times herein and since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

329.    At all relevant times herein and since August 2025, through the present time, Defendants have engaged and continue to engage in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

330.    At all relevant times herein and due to the architectural barriers which remain in the Parking Lot in violation of the ADA, there is no accessible path of travel for Plaintiff leading from the Parking Lot to visit and shop in Key Food that complies with the ADA requirements and Plaintiff is being discriminated against in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

331.    At all relevant times herein and due to the architectural barriers which remain in the Parking Lot in violation of the ADA, there is no accessible path of travel for Plaintiff from the Parking Lot to visit and dine at KFC that complies with the ADA requirements and Plaintiff is being discriminated against in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

332.    At all relevant times herein, Plaintiff encountered architectural barriers to access Key Food, which have made it difficult for him to visit and shop at the store and caused him embarrassment and frustration.

333.     At all relevant times herein, Plaintiff encountered architectural barriers to access KFC, which have made it difficult for him to visit and dine at the restaurant and caused him embarrassment and frustration.

334.     Because Key Food is a place of public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

335.     Because KFC is a place of public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

336.     Because the Parking Lot is a public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

337.     Because Key Food's Parking Lot is public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

338.     Because KFC's Parking Lot is public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

339.     Because the Subject Facilities are public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

340.     Plaintiff has encountered architectural barriers to access Key Food, which have greatly inconvenienced him.

341.     Plaintiff has encountered architectural barriers to access KFC, which have greatly inconvenienced him.

342.     Plaintiff has encountered architectural barriers to the Parking Lot, which have greatly inconvenienced him.

343.     Key Food violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

344.     KFC violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

345.     In 1991, ADA Standards for Accessible Design Title III Regulation 28 CFR Part 36 was published ("1991 Standards").

346.     The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

347.     Defendants are discriminating against Plaintiff, because at their Subject Facilities they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations of Key Food and KFC by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to those listed below.

348.     At all relevant times herein, the Parking Lot is used by customers of Key Food.

349.     At all relevant times herein, the Parking Lot is used by customers of KFC.

350.     At all relevant times herein, customers of Key Food are permitted to park in the Parking Lot that is adjacent to it.

351.     At all relevant times herein, customers of KFC are permitted to park in the Parking Lot that is adjacent to it.

352.     At all relevant times herein, there are four accessible parking spaces in the Parking Lot.

353.     At all relevant times herein, there are no access aisles in the Parking Lot.

354.     At all relevant times herein, there are two accessibility identification signs in the Parking Lot.

355.     In this Complaint, the accessible spaces are numbered from left to right as a car drives in.

356.     "**Signage.** Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (see 4.30.7). Spaces complying with 4.1.2(5)(b) shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility. Such signs shall be located so they cannot be obscured by a vehicle parked in the space." 1991 Standards §4.6.4*

357.     "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

358.     "**Accessible Elements and Spaces: Scope and Technical Requirements. Minimum Requirements.** One in every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in (2440 mm) wide minimum and shall be designated "van accessible" as required by 4.6.4. The vertical clearance at such spaces shall comply with

44

4.6.5. All such spaces may be grouped on one level of a parking structure." 1991 Standards §4.1.2(b)

359.    "**Van Parking Spaces.** For every six or fraction of six parking spaces required by 208.2 to comply with 502, at least one shall be a van parking space complying with 502." 2010 Standards §208.2.4.

360.    "**Parking Spaces.** Accessible parking spaces shall be at least 96 in (2440 mm) wide. Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with 4.3. Two accessible parking spaces may share a common access aisle. Parked vehicle overhangs shall not reduce the clear width of an accessible route. Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 Standards §4.6.3*

361.    "**Vehicle Spaces.** Car parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3." 2010 Standards §502.2.

362.    "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

363.    "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve.

Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

364.    Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

365.    At all relevant times herein, Defendants violated §4.6.3* of 1991 Standards.

366.    At all relevant times herein, Defendants violated 2010 Standards §Advisory 502.4.

367.    At all relevant times herein, Defendants violated §502.4 of 2010 Standards.

368.    At all relevant times herein, there is no identification sign identifying Accessible Parking Space #3 in the Parking Lot in violation of 1991 Standards §4.6.4*

369.    At all relevant times herein, there is no identification sign identifying Accessible Parking Space #3 in the Parking Lot in violation of 2010 Standards §502.6.

370.    At all relevant times herein, there is no identification sign identifying Accessible Parking Space #4 in the Parking Lot in violation of 1991 Standards §4.6.4*

371.    At all relevant times herein, there is no identification sign identifying Accessible Parking Space #4 in the Parking Lot in violation of 2010 Standards §502.6.

372.    At all relevant times herein, there is no identification sign in the Parking Lot identifying any accessible space with an additional sign "Van-Accessible" mounted below the symbol of accessibility in violation of 1991 Standards §4.6.4*

373.    At all relevant times herein, there is no identification sign in the Parking Lot identifying any accessible space as van-accessible in violation of 2010 Standards §502.6.

374.    At all relevant times herein, there was not a single access aisle in the Parking Lot in violation of 1991 Standards §4.6.3*.

375.    At all relevant times herein, there was not a single access aisle in the Parking Lot in violation of 2010 Standards §502.2.

376.    At all relevant times herein, in the Parking Lot each of the accessible spaces is 96 inches wide. There is not a single access aisle in the Parking Lot. Thus, there is not a single van-accessible parking space in the Parking Lot in violation of 1991 Standards §4.1.2(b).

377.    At all relevant times herein, in the Parking Lot each of the accessible spaces is 96 inches wide. There is not a single access aisle in the Parking Lot. Thus, there is not a single van-accessible parking space in the Parking Lot in violation of 2010 Standards §208.2.4.

378.    At all relevant times herein, Accessible Parking Space #1 has a running slope of 5.9%, which is equivalent to 1:16.95, in violation of 1991 Standards §4.6.3*.

379.    At all relevant times herein, Accessible Parking Space #1 has a running slope of 5.9%, which is equivalent to 1:16.95, in violation of 2010 Standards §502.4.

380.    At all relevant times herein, Accessible Parking Space #1 has a cross slope of 5.4%, which is equivalent to 1:18.52, in violation of 1991 Standards §4.6.3*.

381.    At all relevant times herein, Accessible Parking Space #1 has a cross slope of 5.4%, which is equivalent to 1:18.52, in violation of 2010 Standards §502.4.

382.    At all relevant times herein, Accessible Parking Space #2 has a running slope of 5.6%, which is equivalent to 1:17.86, in violation of 1991 Standards §4.6.3*.

383.    At all relevant times herein, Accessible Parking Space #2 has a running slope of 5.6%, which is equivalent to 1:17.86, in violation of 2010 Standards §502.4.

384.    At all relevant times herein, Accessible Parking Space #2 has a cross slope of 4%, which is equivalent to 1:25, in violation of 1991 Standards §4.6.3*.

385.    At all relevant times herein, Accessible Parking Space #2 has a cross slope of 4%, which is equivalent to 1:25, in violation of 2010 Standards §502.4.

386.    At all relevant times herein, Accessible Parking Space #3 has a running slope of 10.2%, which is equivalent to 1:9.8, in violation of 1991 Standards §4.6.3*.

387.    At all relevant times herein, Accessible Parking Space #3 has a running slope of 10.2%, which is equivalent to 1:9.8, in violation of 2010 Standards §502.4.

388.    At all relevant times herein, Accessible Parking Space #3 has a cross slope of 6%, which is equivalent to 1:16.67, in violation of 1991 Standards §4.6.3*.

389.    At all relevant times herein, Accessible Parking Space #3 has a cross slope of 6%, which is equivalent to 1:16.67, in violation of 2010 Standards §502.4.

390.    At all relevant times herein, Accessible Parking Space #4 has a running slope of 7.6%, which is equivalent to 1:13.16, in violation of 1991 Standards §4.6.3*.

391.    At all relevant times herein, Accessible Parking Space #4 has a running slope of 7.6%, which is equivalent to 1:13.16, in violation of 2010 Standards §502.4.

392.    At all relevant times herein, Accessible Parking Space #4 has a cross slope of 8.7%, which is equivalent to 1:11.49, in violation of 1991 Standards §4.6.3*.

393.    At all relevant times herein, Accessible Parking Space #4 has a cross slope of 8.7%, which is equivalent to 1:11.49, in violation of 2010 Standards §502.4.

394.    Plaintiff intends to visit Key Food and KFC again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, detailed in this Complaint, are removed. The purpose of that return visit would be to be both a customer, who comes to enjoy goods and services offered at Key Food and KFC, as well as to determine whether, and when, Key Food, KFC, and the Parking Lot have been made

accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so that other disabled individuals would be able to enjoy Key Food and KFC in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ends.

395.    Plaintiff intends to visit Key Food and KFC again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire whatsoever, to continue to repeatedly subject himself to Defendants' unequal treatment and blatant discrimination of him through their architectural barriers to equal access and engage in the futile gesture of attempting to patronize Key Food and KFC, business places of public accommodation, known to Plaintiff to have numerous and continuing pervasive architectural barriers to equal access for wheelchair users, until Defendants remediate violations at Key Food, KFC and the Parking Lot.

396.    Plaintiff has traveled to Key Food and KFC as a customer, as well as an independent advocate for the disabled, encountered and observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible, suffered legal harm, legal injury, and legal damages, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at Key Food and KFC until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make Key Food, KFC and the Parking Lot equally accessible to all.

397.    Plaintiff will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation,

Plaintiff requires an inspection of Key Food, KFC, and the Parking Lot to measure and photograph architectural barriers that are in violation of the ADA to determine the areas of non-compliance with the law.

398.     The discriminatory violations described above are not an exhaustive list of Defendants' violations of the ADA and creation and/or maintenance of architectural barriers to equal access to Key Food, KFC, and the Parking Lot because Plaintiff was unable to access and assess all areas of Key Food and KFC due to the architectural barriers encountered. A complete list of Key Food's and KFC's ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of remedial measures necessary to remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

399.     At all relevant times herein, Defendants have failed to make Key Food, KFC, and the Parking Lot accessible to Plaintiff given his disabilities. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

400.     At all relevant times herein, Defendants have maintained inadequate maintenance practices, have failed, and continue failing preventing future recurrence of noncompliance with dynamic accessible elements at Key Food in violation of 28 CFR §36.202 and §36.211.

401.    At all relevant times herein, Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at KFC in violation of 28 CFR §36.202 and §36.211.

402.    Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at the Parking Lot in violation of 28 CFR §36.202 and §36.211.

403.    The architectural barriers, described above, have a discriminative effect on Plaintiff, as a wheelchair user, making him unable to experience the same access to Defendants' goods, services, facilities, privileges, advantages, and accommodations of Key Food, KFC, and/or the Parking Lot as able-bodied customers.

404.    At all relevant times herein, Defendants have failed to remove architectural barriers to accessibility to Key Food in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

405.    At all relevant times herein, Defendants have failed to remove architectural barriers to accessibility to KFC in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

406.    At all relevant times herein, Defendants have failed to remove architectural barriers to accessibility to the Parking Lot in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

407.    At all relevant times herein and since March 15, 2012, Defendants have altered the Parking Lot.

408.    **New construction and alterations. (a) Design and construction.** "(1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was

commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

409.     **"(2) Exception for structural impracticability.** (i) Full compliance with the requirements of this section is not required where a public entity can demonstrate that it is structurally impracticable to meet the requirements. Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features. (ii) If full compliance with this section would be structurally impracticable, compliance with this section is required to the extent that it is not structurally impracticable. In that case, any portion of the facility that can be made accessible shall be made accessible to the extent that it is not structurally impracticable." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

410.     **"(b) Alterations.** (1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

411.     Upon information and belief, the Parking Lot was altered after March 15, 2012.

412.     At all relevant times herein, Defendants failed to make Key Food, KFC, and/or the Parking Lot readily accessible to disabled people, including Plaintiff and others who use wheelchairs.

413.    The foregoing violations by Defendants are violations of the 1991 ADAAG, and/or the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

414.    At all relevant times herein, the removal by Defendants of the physical barriers, dangerous conditions, and ADA violations alleged herein has been and is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

415.    At all relevant times herein, it is and has been readily achievable for each Defendant to remediate the ADA violations described above as the costs do not exceed the benefits.

416.    At all relevant times herein, removal of the physical barriers, dangerous conditions, and ADA violations present at Key Food, KFC, and/or the Parking Lot is and has been readily achievable because of the site conditions, the structural design of the store and the straightforward nature of the necessary modifications.

417.    To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

418.    At all relevant times herein, removal of the architectural barriers at Key Food, KFC, and/or the Parking Lot has been and is readily achievable because of the relative low cost of the modifications required to comply with the 1991 and/or 2010 ADA Standards.

419.    At all relevant times herein, Defendants have financial resources to make the modifications to comply with the ADA, including the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

420.    At all relevant times herein, and at the time of Plaintiff's visit to Key Food and/or KFC, the Parking Lot was not accessible for individuals with disabilities in violation of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

421.    At all relevant times herein, it was structurally practicable for Defendants to make Key Food, and/or KFC, and/or the Parking Lot meet the requirements of the 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

422.    At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, they were not accessible for individuals with disabilities in violation of the 2010 ADA Standards.

423.    At all relevant times herein, for Defendants, it was structurally practicable to make Key Food, and/or KFC, and/or the Parking Lot meet the requirements of 2010 ADA Standards.

424.    At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, the Parking Lot was not in compliance with the accessibility standards of Title III of 1991.

425.    At all relevant times herein, and at the time of Plaintiff's visit to Key Food, and/or KFC, the Parking Lot was not constructed in a manner that complied with the accessibility standards of Title III of 1991.

426.     At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, the Parking Lot and/or Key Food and/or KFC had undergone alterations, and Key Food and/or KFC and/or the Parking Lot were not in compliance with the accessibility standards of Title III of 1991.

427.     At the time of Plaintiff's visit to Key Food, and/or KFC, and/or the Parking Lot, they did not comply with the accessibility standards of Title III of 1991.

428.     At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, their primary function areas had undergone alterations and thereby the Subject Facilities did not comply with 2010 ADA Standards.

429.     At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, and/or the Parking Lot, due to architectural barriers the Parking Lot did not comply with 2010 ADA Standards.

430.     At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, and/or the Parking Lot, due to architectural barriers, Key Food and/or KFC and or the Parking Lot were not constructed in a manner that complied with 2010 ADA Standards.

431.     At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, and/or the Parking Lot they had undergone alterations after March 15, 2012, and did not comply with 2010 ADA Standards.

432.     At all relevant times herein and at the time of Plaintiff's visit to Key Food, and/or KFC, and/or the Parking Lot they were not maintained in a manner that complied with 2010 ADA Standards.

433.     At all relevant times herein, and at the time of Plaintiff's visit to Key Food and/or KFC and/or the Parking Lot, by continuing to maintain and/or operate Key Food, and/or

KFC, and/or the Parking Lot with conditions in violation of the ADA, one or more Defendants contributed to Plaintiff's sense of isolation and segregation, depriving him of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

434.    At all relevant times herein, Defendants have been and are required to remove existing architectural barriers to the disabled at Key Food, and/or KFC, and/or the Parking Lot when such removal is readily achievable. 28 CFR 36.304(a)

435.    At all relevant times herein, since January 26, 1992, as there has been an alteration to a primary function area of one or more of Defendants' places of public accommodation and/or alteration to the Parking Lot, one or more Defendants had a duty to and failed to ensure that paths of travel to Key Food, and/or KFC and/or to or from the Parking Lot, were made readily accessible to the maximum extent feasible for disabled individuals, including Plaintiff and other people who use wheelchairs. 28 CFR 36.402.

436.    The Parking Lot was constructed after January 26, 1992, as defined in 28 CFR 36.401, and pursuant to the ADA, the Parking Lot and Defendants' Subject Facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

437.    At all relevant times herein, Defendants have failed to comply with the above mandates.

438.    At all relevant times herein, Defendants failed to make the Parking Lot "readily accessible to and usable by individuals with disabilities," even though alteration to the Parking Lot was commenced after January 26, 1992, and/or after March 15, 2012, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

439.     At all relevant times herein, one or more Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

440.     At all relevant times herein, one or more Defendants violated their obligation to remove architectural barriers that prevented disabled individuals, including Plaintiff, from enjoying goods and services provided by the public accommodation under the control of one or more Defendants, thus discriminating against him.

441.     Plaintiff's requested relief serves public interest.

442.     At all relevant times herein, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the 1991 and/or 2010 ADA standards, still exist in the Parking Lot and have not been remediated, or altered, in such a way as to comply with the provisions of the ADA.

443.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make Key Food, KFC, and the Parking Lot readily accessible to persons with disabilities.

444.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make Key Food readily accessible to persons with disabilities.

445.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make KFC readily accessible to persons with disabilities.

446.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make the Parking Lot readily accessible to persons with disabilities.

447.     Defendants did not remove architectural barriers for disabled individuals at the Subject Facilities by January 26, 1992. To date, they have failed to comply with that mandate.

448.     At all relevant times herein, Defendants' failure to remove architectural barriers that frustrate access for disabled individuals constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

449.     At all relevant times herein, it was not structurally impracticable for Defendants to make the Parking Lot accessible.

450.     At all relevant times herein, removal of all architectural barriers existing at the Parking Lot was, and is, readily achievable by Defendants.

451.     At all relevant times herein, accommodations to Plaintiff and removal of the architectural barriers for individuals with disabilities at the Parking Lot by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

452.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facilities.

453.     At all relevant times herein, Defendants' failure to make the Parking Lot accessible to Plaintiff has denied him an equal opportunity to participate in, or to benefit from, services, or accommodations, because of his disability.

454.     At all relevant times herein, the effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of Key Food, and/or KFC, and to otherwise adversely affect his status as a member of the public interested in accessing the

place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

455.     At all relevant times herein, the Parking Lot is not accessible to, or readily usable by, individuals with disabilities.

456.     Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Parking Lot, to make it accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close Key Food and/or KFC until the required modifications are completed.

457.     Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of Key Food and/or KFC is legally inexcusable.

458.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

459.     The inexcusability of Defendants' actions is exacerbated by the fact that over 30 years have passed since the effective date of Title III of the ADA. During that time, they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but did not do so.

460.     At all relevant times herein, by not removing the architectural barriers, which barred Plaintiff's access, inconvenienced, and frustrated him, Defendants gave a crystal-clear message to Plaintiff that his patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

461.    Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

462.    The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

> NYS Executive Law §296(2)(a)

463.    The Subject Facilities is a place of public accommodation, as defined in New York State Human Rights Law §292(9).

464.    Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

465.     Defendants are in violation of the New York State Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facilities.

466.     Defendants do not provide Plaintiff with equal opportunity to use their public accommodation.

467.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

468.     Defendants have not provided Plaintiff with evenhanded treatment in violation of New York State Human Rights Law §296.

469.     Defendants' unequal treatment of Plaintiff was demonstrated when he was discriminated against.

470.     Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodations.

471.     Defendants have demonstrated that Plaintiff's patronage is unwelcome, unwanted, undesirable, unacceptable, and objectionable.

472.     In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff.

473.     Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

## THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

474.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

475.     Defendants have violated Plaintiff's civil rights because of his disability.

476.     Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

477.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

478.     A copy of this Complaint is being served upon the attorney general by the United States mail, first class mail, postage prepaid.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Law

479.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

480.     The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>
> 1. Because of any person's actual or perceived … disability …, directly or indirectly:

> (a) to refuse, withhold from or deny to such
> person the full and equal enjoyment, on equal
> terms and conditions, of any of the
> accommodations, advantages, services,
> facilities or privileges of the place or provider
> of public accommodation;

NYC Admin. Code §8-107(4)

481.     Defendants have not reasonably accommodated Plaintiff in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

482.     In violation of the New York City Administrative Code, Defendants have unlawfully discriminated against Plaintiff.

483.     Reasonable accommodations and modifications are necessary to enable Plaintiff to enjoy non-restricted access and use of Defendants' Subject Facilities.

484.     In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Subject Facilities have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

485.     In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that Plaintiff's patronage is unwelcome, objectionable and not acceptable.

486.    Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facilities.

487.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

488.    A copy of this Complaint is being served upon the New York City Commission on Human Rights by United States mail, first class mail, postage prepaid.

489.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

490.    Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28 C.F.R. §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For

the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)

## COMPENSATORY AND STATUTORY MONETARY DAMAGES

491.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York City Human Rights Law, NYC Admin. Code §8-125.

In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the EASTERN District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other

than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

> Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

492.     Plaintiff requests statutory monetary damages in the sum of $500 from Defendants to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….
>
> Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

493.     The reason Plaintiff requests $500 from Defendants, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which

were alleged in detail in this Complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here, and it is likely that they will be revealed upon inspection of the Subject Facilities by an expert.

## **INJUNCTIVE RELIEF**

494.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facilities to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law, and close the Subject Facilities until requisite modifications are completed.

495.    Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination.

496.    Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facilities to make it readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adopt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides him with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this Complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations

within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

497.    Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff would not be subject to further unlawful discrimination.

## DECLARATORY RELIEF

498.    Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from the Subject Facilities by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.    Grant a permanent injunction

    i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

    ii.)  Requiring Defendants to alter their Subject Facilities to make them readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

    iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

    iv.) Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain the full and equal enjoyment of the Subject Facilities owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

    v.)  Ordering Defendants to make their Subject Facilities readily accessible to and usable by Plaintiff and other individuals with disabilities.

    vi.) Ordering the issuance of an injunction that requires Defendants

        i.  to prepare architectural plans remedying the ADA violations described in the Complaint, and

        ii.   to provide Plaintiff's counsel with those plans for review within 60 days of the Court's Order.

vii.)    Ordering that the injunction affords Plaintiff 30 days to file a motion seeking relief on the basis that Defendants' proposed architectural plans are inadequate to remedy the ADA violations specified in the Complaint; and

viii.)    Ordering that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement or a ruling by the Court that the plans are adequate.

B.    Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C.    Enter declaratory judgment specifying that the Subject Facilities owned, operated, leased, controlled, maintained and/or administered by Defendants violate the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D.    Enter an order requiring Defendants to alter their Subject Facilities and amenities to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.    Hold Defendants liable for $500 in statutory monetary damages for their violations and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

70

F.  Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.  Retain its jurisdiction over Defendants until their unlawful practices, acts, and omissions no longer exist;

H.  Find that Plaintiff is a prevailing party in this litigation.

I.  Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.  Award such other and further relief as it deems necessary, just, and proper.

## JURY DEMANDED

Plaintiff demands a trial by jury of all the issues of fact and damages.

September 3, 2025

Respectfully submitted,

s:/Daniel Berke
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on September 3, 2025, I filed the foregoing Complaint with the Court via CM/ECF, which caused notice to be served upon all e-filing attorneys of record. In addition, I also mailed copies of the foregoing Complaint by the United States mail, first class mail, postage prepaid, to the Civil Rights Bureau and the New York City Commission on Human Rights at the following addresses: Civil Rights Bureau, 28 Liberty Street, New York, NY 10005; and Damion K. L. Stodola, General Counsel, NYC Commission on Human Rights, 22 Reade Street, 2nd Floor, New York, NY 10007.

September 3, 2025

Respectfully submitted,

s:/Daniel Berke
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*